**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: **07 - 61395**

**CIV-ZLOCH**

**MAGISTRATE JUDGE**
**SNOW**

FREDRICK BLACK,

     Plaintiff,

v.

APPLE, INC., a
foreign corporation,

     Defendant.

_____/

## NOTICE OF REMOVAL

    Defendant Apple Inc. ("Apple"), pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453 and with full reservation of defenses, hereby removes this action from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to the United States District Court for the Southern District of Florida. The grounds for removal are as follows.

    1.    Complaint. On August 29, 2007, Apple was served with a class action complaint filed by plaintiff Fredrick Black for alleged violations of the Florida Antitrust Act, Fla. Stat. §§ 542.15-542.36 (2007), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213 (2007). Apple is the only defendant. Consolidated cases raising similar issues have been pending for over two years in the United States District Court for the Northern District of California before the Honorable James Ware under the caption *The Apple iPod iTunes Antitrust Litigation*, Case No. C05-00037 JW.

Dockets.Justia.com

2.    Parties.

(a)    Plaintiff is a citizen of the state of Florida that resides in Broward County. Compl., ¶ 3 (attached hereto as Exhibit A). Plaintiff purports to represent a class consisting solely of "Florida consumer[s]." *Id.* at ¶ 22.

(b)    Apple is a citizen of the State of California because it is incorporated under the laws of the State of California and has its principal place of business in Cupertino, California. Declaration of Leroy Elkin in Support of Defendant Apple Inc.'s Notice of Removal ("Elkin Decl."), ¶ 2 (attached hereto as Exhibit B).

3.    Plaintiff's Allegations.  The complaint alleges the following:

(a)    Apple owns and operates iTunes Store, "an internet based music store which sells for a fee, digital music content and digital video content" and has sold over three billion songs through the store. Compl., ¶¶ 30, 32.  Apple is the "third largest music retailer in the United States behind Wal-Mart Stores and Best Buy." *Id.* at ¶ 32.  Apple also sells iPods, a portable device for playing digital media files. *Id.* at ¶¶ 29, 34.  Apple has sold over 100 million iPods since November 2001 when the product was introduced. *Id.* at ¶ 34.  Apple, like other competitors that sell digital music over the Internet, uses an encoding system known as digital rights management (DRM) "in an effort to preclude piracy" "so that [the digital files] cannot be freely copied by the consumers." *Id.* at ¶ 37.  Apple uses its own proprietary DRM system rather than licensing Microsoft's Windows Media Audio (WMA). *Id.* at ¶¶ 37, 38, 41.  As a result, the iPod and digital content from the iTunes Store allegedly are not interoperable with competitors' products. *Id.* at ¶ 39.

(b)    Based on these allegations, plaintiff asserts a violation of the Florida Unfair Competition Act, and actual and attempted monopolization in violation of the Florida

2

Antitrust Act. *See, e.g.,* Compl., ¶¶ 45-54, 75-77. In essence, plaintiff alleges that Apple's use of its proprietary DRM rather than Microsoft's version of DRM constitutes unlawful "tying practices" and that consumers "are often unaware of this restriction." *Id.* at ¶¶ 61, 76.

(c)    Plaintiff purports to represent a class that "is greater than 100,000 people" and is "defined as any Florida consumer who has purchased an Apple iPod or any Florida consumer who has purchased and downloaded digital content (music, video, etc.) from the iTunes Store." *Id.* at ¶ 22. According to the complaint, "[t]he class period is from November 2001 to the present." *Id.* at ¶ 25.

(d)    Plaintiff alleges that he and the consumers he seeks to represent have been subjected to "inflated pricing of portable digital media players, online music and video files" and forced "to purchase [Apple's] products at a substantially higher price than Plaintiff and Plaintiff class would have paid in the absence of [Apple's] unlawful conduct." *Id.* at ¶¶ 65(b), 80(b)-(c), 82, 97(b)-(c), 99. Plaintiff seeks treble damages, attorney's fees and costs. *Id.* at ¶¶ 67, 83, 100.

4.    <u>Basis for Jurisdiction</u>. The Court has jurisdiction over this removed action pursuant to the Class Action Fairness Act (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in scattered sections of 28 U.S.C.) 28 U.S.C. §§ 1332(d), 1441. This case could have been filed originally in this Court because it is a purported class action wherein a class member is a citizen of a State different from Apple, and the aggregated amount in controversy based on plaintiff's allegations exceeds the sum of $5 million exclusive of interest and costs.

(a)    <u>Class Action</u>. This is a "class action" pursuant to CAFA in that the number of proposed class members exceeds 100 and plaintiff filed his complaint under Florida Rules of Civil Procedure 1.220(b), which authorizes "an action to be brought by one or more

representative persons as a class action." *See* 28 U.S.C. §§ 1332(d)(1)(B), (d)(5)(B); Compl., ¶¶ 19, 22 ("the number of class members is greater than 100,000 people").

        (b)    <u>Diversity Between Plaintiff Class and Defendant</u>. There is at least minimal diversity of citizenship between the purported plaintiff class and Apple in that plaintiff is a Florida citizen and Apple is a citizen of the State of California because it is incorporated under the laws of the State of California and has its principal place of business in Cupertino, California. Elkin Decl., ¶ 2; Compl., ¶¶ 3, 4; *see* 28 U.S.C. § 1332(d)(2)(A). Indeed, complete diversity of citizenship between plaintiff class and Apple exists in that the alleged plaintiff class consists solely of "Florida consumer[s]." Compl., ¶ 22.

        (c)    <u>Amount in Controversy</u>. Claims of individual class members are aggregated when calculating the amount in controversy pursuant to CAFA. 28 U.S.C. § 1332(d)(6). Apple has sold more than one million iPods to Florida consumers. Elkin Decl., ¶ 3. The initial price was $399; today the prices vary by model from $79 to $399. *Id.*, ¶ 4. Given plaintiff's allegations of a "substantial" overcharge on all iPods sold to Florida consumers during a six year period (and all iTunes Store music and videos sold to Florida consumers) and his request for treble damages, the amount in controversy is satisfied. With at least one million iPods sold in Florida, an alleged overcharge of only $1.67 per iPod – which is less than one-half percent of the current highest priced iPod and two percent of the lowest priced iPod – exceeds the $5 million threshold even without consideration of the alleged overcharge on iTunes Store music and videos. *See Senterfitt v. Suntrust Mortgage, Inc.*, 385 F. Supp. 2d 1377, 1383-82 (S.D. Ga. 2005) (treble damages included when calculating the amount in controversy pursuant to CAFA); *see also Rosen v. Chrysler Corp.*, 205 F.3d 918, 922 (6th Cir. 2000) (treble damages included when calculating amount in controversy for purposes of diversity jurisdiction). The

conclusion that the $5 million threshold is met is buttressed by plaintiff's allegations that the price of all iTunes Store tracks sold to Florida consumers has also been substantially inflated (Compl., ¶¶ 65(b), 80(b)-(c), 82, 97(b)-(c), 99) and by his request for attorney's fees (*see Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1265 (11th Cir. 2000) ("When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy.") . In short, given plaintiff's class allegations including the allegation of a "substantial overcharge" and treble damages, and the number of iPods sold in Florida, the aggregated amount put into controversy by plaintiff exceeds the required $5 million threshold.

5.    Consent. There are no other parties that need to consent to this removal.

6.    Notice Given. Pursuant to 28 U.S.C. § 1446(d), Apple is filing this Notice of Removal with the state court in which the action is currently pending.

7.    Removal is Timely. Removal is timely because Apple was served on August 29, 2007, less than thirty days before the filing of this Notice of Removal. *See* Ex. A. 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (thirty-day time period for removal runs from the date of formal service).

8.    Pleadings and Process. As required by 28 U.S.C. § 1446(a), Apple has attached copies of all state court process and pleadings to this Notice of Removal as Exhibit A.

9.    Venue. Venue is proper because the United States District Court for the Southern District of Florida embraces Broward County, the county in which the state court action is now pending. *See* 28 U.S.C. §§ 89(b), 1441(a); *see also* Exhibit A (Compl.)

10.    Non-Waiver of Defenses. Apple expressly reserves all of its defenses. Apple denies any liability or that plaintiff or any other consumer has been injured in any way. *See, e.g., Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 691 (S.D. Ohio 2006) ("the fact that Defendant removed

5

the case does not mean that Defendant concedes that Plaintiff has adequately alleged appropriate damages.")

WHEREFORE, Defendant Apple Inc., pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453, removes this action from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to this Court.

Dated:  September 28, 2007                    Respectfully submitted,

Janet T. Munn, Esq. (Florida Bar No. 501281)
jmunn@ebglaw.com
Epstein Becker & Green, P.C.
200 S. Biscayne Boulevard, Suite 2100
Miami, Florida 33131
Tel: 305-375-7592
Fax: 305-982-1521
Cell:  305-450-6223
Attorneys for Defendant, Apple Inc.

Of Counsel:

Robert A. Mittelstaedt (California Bar No. 060359)
ramittelstaedt@jonesday.com
Tracy M. Strong (California Bar. No. 221540)
tstrong@jonesday.com
Lara Kollios (California Bar No. 235395)
lkollios@jonesday.com
Jones Day
555 California Street
26th Floor
San Francisco, California 94104
Telephone:  415-875-5710
Fax:  415-875-5700
Attorneys for Defendant, Apple Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail to Edward R. Curtis, Esq., and William T. Cotterall, Esq., Tripp, Scott, P.A., 110 S.E. Sixth Street, 15th Floor, Fort Lauderdale, Florida 33301 this 28th day of September, 2007.

_Janet T. Munn_
Janet T. Munn

7

# EXHIBIT A



The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075.

I.      CASE STYLE

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
PALM BEACH COUNTY, FLORIDA

FREDERICK BLACK,                             Case No.:

        Plaintiff,                           Judge:

-vs-

APPLE, INC.

        Defendant

II.     TYPE OF CASE

| Domestic Relations | Torts | Other Civil |
|---|---|---|
| ____ Simplified dissolution | ____ Professional Malpractice | ____ Contracts |
| ____ Dissolution | ____ Products Liability | ____ Condominium |
| ____ Support – IV-D | ____ Auto Negligence | ____ Real Property |
| ____ Support – Non IV-D | ____ Other Negligence | Mortgage Foreclosure |
| ____ URESA –IV-D | | ____ Eminent Domain |
| ____ URESA-Non IV-D | | _X_ Other |
| ____ Domestic Violence | | |
| ____ Other Domestic Relations | | |

III.    Is Jury Trial Demanded in Complaint?        _X_ Yes        ____ No

DATE _Aug 24, 2007_        SIGNATURE OF ATTORNEY FOR PARTY INITIATING ACTION

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.

FREDERICK BLACK,

        Plaintiff,

-vs-

APPLE, INC., a foreign corporation,

        Defendant.

_____

# SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this Summons and a copy of the Complaint along with Interrogatories and Request for Production in this action on Defendant **APPLE, INC.**, by served its **registered agent**:

**Chief Financial Officer**
**200 East Gaines Street**
**Tallahassee, Florida 32399**

    Each Defendant is required to serve written defenses to the Complaint on Edward R. Curtis, Esquire, Plaintiff's attorney, whose address is Tripp, Scott, P.A., 110 SE 6th Street, 15th Floor, Fort Lauderdale, Florida 33301, within 20 days after service of this summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

AUG 27 2007

HOWARD FORMAN
As Clerk of the Court

By _____
    As Deputy Clerk

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:

CLASS REPRESENTATION



FREDERICK BLACK,                    }
               Plaintiff,    }
                          }
-vs-                                }
                          }
APPLE, INC., a                      }
foreign corporation,                }
            Defendant.    }
_____/

### COMPLAINT

1.    The Plaintiff, FREDERICK BLACK ("Black" or "Plaintiff"), on his own behalf and on behalf of the class, file suit against Defendant, APPLE, INC., a foreign corporation, and states:

### Jurisdiction and Venue

2.    This is an action seeking damages in excess of $15,000.00 in damages, exclusive of attorneys' fees and costs.

3.    Plaintiff is a resident of Broward County, Florida.

4.    Defendant is a corporation incorporated under the laws of a State other than the State of Florida, having its principal place of business in the State of California.

5.    At all times material hereto, Defendant distributes its products through wholesalers, resellers, and national and regional retailers (such as BestBuy, Inc., Circuit City, Inc., and Office Depot, Inc.) who have retail locations throughout Broward County, Florida.

6.    In addition to using the aforementioned distribution network, Defendant maintains a retail location, the Apple Store The Galleria, located at 2388 East Sunrise Boulevard, Fort Lauderdale, Broward County, Florida 33304.

1

436248v1 993991.0001

7.    In addition to using third party retailers, Defendant advertised its iPod portable digital media players to consumers through the Apple Store web site and made itself available to Florida consumers for consumers to purchase Defendant's products directly from Defendant through the web site. Defendant would then ship the product directly to the consumer after the consumer paid consideration for the product, usually in the form of a credit card transaction or a purchased gift card.

8.    Defendant advertised its iTunes Store to Florida consumers through third party retailers, in the iPod materials and through Defendant's web site. Once the consumer downloaded the proprietary iTunes software, consumers were connected to Defendant's iTunes Store through the internet. Once connected to the iTunes store, Defendant made available to Florida consumers both music and video files for sale. The consumers would then purchase the music or video file, usually through a credit card transaction or through a purchased gift card.

9.    Jurisdiction and venue are proper pursuant to Florida Statute 542.30.

## General Allegations

10.    Plaintiff is the lawful owner of iPods purchased from Defendant.

11.    Plaintiff has purchased music downloads from iTunes Store ("iTunes Store").

12.    Plaintiff Black purchased his iPod in November of 2004 from an Apple Store. Black also has an iPod Nano which he received by redeeming points accumulated in an awards program.

13.    Plaintiff and members of the Plaintiff class purchased music files and video files from Defendant through the iTunes Store via the iTunes proprietary software.

14.    Plaintiff and members of the Plaintiff class purchased iPods from Defendant, either through a third party retailer, through the Apple Store via the internet or at the Apple Store

2

retail locations.

15.    Plaintiff and Plaintiff class have never been engaged in the business of the sale of digital media or digital media devices similar to Defendant's business.

16.    Plaintiff was required to retain Tripp Scott, P.A. and is responsible for their legal fees and costs.

17.    In November 2001, Defendant introduced the iPod portable digital media player and the iTunes Store for consumers to purchase, download and listen to digital music files. Both the iPod and iTunes were later modified to support video files for the consumer to purchase, download and watch.

18.    All conditions precedent to bringing this action have either been complied with or waived.

## Class Representation Allegations

19.    This is a properly maintainable class action pursuant Fla. R. Civ. P. 1.220(b) as Defendant has acted on grounds applicable to all members of the class, thereby making final relief concerning the class as a whole appropriate *and* the prosecution of separate claims by individual members of the class would create a risk of adjudications of individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests.

20.    The questions of law and fact contained herein are common to the claim of the Plaintiff and the claim of each member of the class. Specifically:

   a)  Did Defendant conduct itself in an manner that was deceptive and unfair under the Florida Deceptive and Unfair Trade Practices Act; and

b) Does the Defendant maintain a monopoly in the relevant markets discussed herein; and

c) Has Defendant conducted itself in such a manner as to attempt to maintain a monopoly in the relevant markets discussed herein; and

d) The definition of the relevant markets as discussed herein; and

e) The relevant class period; and

f) The market influence and power Defendant has in each of the relevant markets discussed herein; and

g) Whether the restrictions Defendant places on its customers are unconscionable; and

h) Whether Plaintiff and Plaintiff class have been damaged by Defendant's practices.

21.    The facts and circumstances show the claims advanced by the Plaintiff are typical of the claim of each member of the class. Specifically, the consumer's purchase of an iPod, the limitations placed upon the consumer through the iPod and iTunes Store by Defendant, the tying between the relevant markets, and Defendant's economic power over the relevant markets based upon their market share. These facts and circumstances are typical for each member of the class.

22.    Upon information and belief, the number of class members is greater than 100,000 people. The "class" may be defined as any Florida consumer who has purchased an Apple iPod or any Florida consumer who has purchased and downloaded digital content (music, video, etc.) from the iTunes Store.

23.    Plaintiff will fairly and adequately protect and represent the interests of each member of the class as Plaintiff is a Florida consumer who has purchased iPods, who has purchased digital content from the iTunes Store, and who has been frustrated by the restrictions

put in place by Defendant.

24.    The facts and circumstances that supporting that this action may be maintained as a class action pursuant to the particular provisions of Fla. R. Civ. P. 1.220(b) are:

a) The members of the potential class are all Florida consumers who have purchased an iPod or have purchased content from the iTunes Store. This makes the number of potential class members so great, that to try each case separately is impracticable, would not be judicially feasible and may lead to conflicting outcomes.

b) As the claim is addressing two product lines, the iPod and iTunes, and the tying of these two products, the questions of law and will be the same for all potential members of the class.

c) All potential members of the class are faced with the same restrictions of use placed upon them by Defendant.

d) As each potential member of the class has paid a similar, quantifiable sum for the products they have purchased.

e) The claim of the class representatives is similar to all potential members of the class in that Plaintiff faces the same restrictions that are faced by the class members in that they cannot transfer content purchased from iTunes to a non iPod digital music player nor can they download digital content from other online vendors to their iPod. Furthermore, if they are unable to transfer songs they have purchased from iTunes to a different portable digital music player should they loose or break their iPod. Therefore they are forced to either purchase another iPod or not be able to use their purchased music on the new digital music player.

436248v1 993991.0001

25.    The class period is from November 2001 to the present.

## Relevant Markets

26.    The "relevant markets" as discussed herein are the portable digital media player market, the online music market and the online video market as they are made available to the consumers of the State of Florida.

27.    The "*Online Music market*" is the market for digital music where the consumer legally downloads digital music content from the internet. Downloadable music is appealing to the consumer because it allows the consumer to purchase individual songs rather than an entire compact discs ("CD"). Music downloads are also considered to be of a higher quality than previous formats, easier to transport, do not take up the space of prior formats, last longer, and are able to be readily organized in any order which the user desires, regardless of artist or on which CD the song was released. Users are also able to shop for music from the comfort of their home or office without having to drive to a physical retailer. Online music is also appealing to retailers because retailers can offer thousands of titles for the consumer to choose from without the overhead expense of transporting physical CDs to the "brick and mortar" stores and are not required to take up valuable retail space on the shelves, which would only be able to display a fraction of what may be offered online. These files can be downloaded and played on portable digital media players.

28.    The "*Online Video market*" is substantially similar to the Online Music market but rather than the consumer downloading music files, the consumer downloads video files. These video files may consist of television shows, music videos, and movies. The Online Video market shares the same consumer conveniences and advantages as the music files discussed above. These files can be downloaded and played on portable digital media players.

6

29.    The "*Portable Digital Media Player market*" consists of a personal or portable device that is capable of playing digital media files, such as digital music and digital video. These devices may consist of two different types of storage for the digital files, FLASH RAM storage or hard drive storage.

## Relevant Market Share

30.    Defendant owns and operates iTunes Store, an internet based music store which sells for a fee, digital music content and digital video content. Users access iTunes Store by downloading a stand alone program, called "iTunes", from Defendant's web site onto the user's computer. The user must then install this proprietary software program, designed by Defendant, onto the user's computer. Once the iTunes software is installed, the user creates an iTunes account, which then allows the user to download digital music and video files from the iTunes Store.

31.    The majority of "online" internet music stores are readily accessible to the general public by the consumer accessing the store through a standard internet browser, such as Netscape or Internet Explorer, and do not require the consumer to download proprietary software that must be installed on the consumer's computer.

32.    By January 2007, Defendant has sold over two billion songs through its iTunes Store. Seven months later, in July 2007, Defendant announced that it had sold over three billion songs through its iTunes Store, meaning approximately one billion songs have been purchased from Defendant's iTunes Store in less than seven months. Defendant's iTunes Store maintains the largest online catalog and features over 5 million songs, 550 television shows and 500 movies. The iTunes Store is the third largest music retailer in the United States behind Wal-Mart Stores and Best Buy. Both Wal-Mart Stores and Best Buy sell the majority of their music in CD

7

format whereas iTunes Store is entirely digital content purchased online.

33.     Upon information and belief, Defendant controls approximately 80% - 85% of the online music market and online video market through its iTunes Store.

34.     From the time it was introduced in November 2001 through April 2007, Defendant has sold over 100 million iPods, making the iPod the fastest selling music player in history.

35.     In 2006, Defendant announced that Chrysler Group would be offering iPod specific integration as an option in most 2006 automobile models, including Chrysler, Jeep and Dodge models, stating that over three million, 40% of all cars sold in the United States in 2006 will offer iPod integration.

36.     Upon information and belief, Defendant controls approximately 79% of the total market for portable digital media players with the iPod, while it is believed the next closest competitor has approximately 8% of the market share.

### Tying of iPod and iTunes

37.     Digital music files and digital video files can be found in a variety of formats, including wma and mp3, which are widely used by the general public.  However, the online music industry, in an effort to preclude piracy, has made a practice of encoding the digital files so that they cannot be freely copied by the consumers.  This encoding system is referred to as digital rights management (DRM).  The most widely used format supporting DRM is the WMA system.

38.     Rather than using an industry wide DRM system, Defendant created and uses a proprietary DRM system to limit the playability of music purchased from iTunes Store, thereby preventing files legally purchased by consumers from the iTunes Store from being used on a

436248v1 993991.0001

competitors portable digital media player.  As stated by Defendant, their DRM "envelops each song purchased from the iTunes Store in special and secret software so that it cannot be played in unauthorized devices."

39.    Defendant refers to its DRM system as "Fairplay".  The only devices on which a Fairplay encoded file can operate is either an iPod or a computer with the iTunes software. Fairplay is specifically engineered not to operate, on any non-Apple digital media player or computer without the iTunes proprietary software.

40.    Although Defendant could license its Fairplay system to other manufacturers, it chooses not to, so that Defendant can continue to limit competition and maintain its dominant market share in the relevant markets.

41.    Although Defendant could purchase a license and usage rights for the WMA system, it chooses not to, so that Defendant can continue to limit competition and maintain its dominant market share in the relevant markets.

42.    Although Defendant could negotiate inter cooperative agreements to use a DRM system that is used throughout the relevant markets, it chooses not to, so that Defendant can continue to limit competition and maintain its dominant market share in the relevant markets.

43.    PortalPlayer (recently purchased by NVIDIA) is a semiconductor company which supplies several companies system-on-a-chip (SoC) semiconductors for use in portable digital media players, including the Defendant's iPod. As produced, the PortalPlayer SoC supports the widely used WMA format.  The Sigmatel chip is a third party component used in many portable digital media players, including the many of the Flash Ram iPod units.  As produced, the Sigmatel chip supports the widely used WMA format.

44.    Prior to the iPod being shipped to consumers, Defendant takes the extra step of

9

disabling the iPod's PortalPlayer and Sigmatel chips from operating any DRM system other than Defendant's proprietary Fairplay system. This includes disabling the chips from playing the widely used WMA system or any system other than Defendant's Fairplay.

45.     Rather than allowing the consumers to download music and video files from other online stores and allowing those files to be compatible with and to be played on the iPod, Defendant restricts the iPod so that the only DRM protected files it can play are those purchased from the iTunes Store.

46.     Rather than encoding iTunes Store songs with a DRM system capable of being played on non-iPod portable digital media players, Defendant intentionally restricts the use of iTunes Store digital media to the iPod or the iTunes software.

47.     For the reasons stated, Defendant has unreasonably and illegally tied the iPod and iTunes Store so that the consumers are unreasonably frustrated. These two products make up an unprecedented share of the online music market, online video market and the portable digital media player market.

48.     Defendant, by controlling such a large part of the portable digital media player market, the online music market and the online video market, maintains sufficient economic power in these markets to control consumer pricing in these markets, which has resulted in consumers paying a higher price.

49.     Defendant, by controlling such a large part of the portable digital media player market, the online music market and the online video market, maintains sufficient economic power in these markets to control what content may be available to consumers who use personal digital media players and online music stores other than those provided by Defendant, as Defendant has sufficient economic power to influence the third-party companies who provide the

10

digital content to the online retailers.

50.    Defendant's actions continue to keep prices in the relevant markets artificially high for the consumer and limit the available options for consumers.

51.    Defendant's actions preclude consumers from using the two products as intended or using all of the product features, unless the consumers use the iPod and iTunes together.

52.    Defendant uses technological restrictions in the iPod and iTunes content that have no business justification and exclude competition in the relevant markets and restrict innovation

53.    Defendant's tying of the iPod and iTunes constitutes an unreasonable restraint on competition in the online music market, the online video market, and the portable digital media player market and thereby frustrates the consumer.

54.    Since an iTunes library is not compatible with any other portable digital music player, if a consumers iPod breaks or is lost, the consumer is forced to repurchase an iPod from Defendant or lose the use of the iTunes content as it was intended to be used.    Therefore, Defendant uses its economic and market share leverage to force the consumers to purchase Defendant's products, something the consumers would not be required to do in a competitive marketplace.

**Count I**
**Violation of the Florida Deceptive and Unfair Trade Practice Act**

55.    Plaintiff realleges and reavers paragraphs 1 though 54 as if fully stated herein.

56.    This is an action for damages for the violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA").

57.    Plaintiff and Plaintiff class are "consumers" as defined in §501.203(7) of the Florida Statutes.

58.    At all times material hereto, Defendant was engaged in "trade or commerce" as

11

defined in §501.203(8) of the Florida Statutes. Specifically, Defendant was engaged in the advertising, sale, and distribution of its iPod portable digital media players and iTunes Store music and video file files to the Plaintiffs and Plaintiff class.

59.    Once the iPods units were assembled and packaged, Defendant used its distribution network to ship the iPod units to the State of Florida where Defendant would then use both third party retailers and its own retail store to sell the iPod to the general public. The consumers paid value to purchase Defendant's portable digital media players.

60.    The sale of the iPod portable digital media players and iTunes Store music and video files in this cause of action are "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Act, §§ 501.201 to 501.213 of the Florida Statute.

61.    Defendant, through its FairPlay system, intentionally restricts the use of its iPod portable digital music players so that consumers may only purchase DRM protected online music and video files from Defendant through Defendant's proprietary web based iTunes Store. Consumers are often unaware of this restriction and unlawful tying of the iPod and iTunes when they purchase the iPod or download digital files from the iTunes Store.

62.    Defendant's aforementioned actions and practices constitute an unfair method of competition and an unfair or deceptive practice in trade or commerce.

63.    At all times material hereto, Defendant has, and continues to, willfully use a method, act or practice which is unlawful under §501.204 of the Florida Statutes.

64.    Defendant knew, or should have known, that its conduct was unfair, deceptive or prohibited.

65.    Plaintiff and Plaintiff Class have suffered damages proximately caused by Defendant's violation of FDUPTA. Specifically, Plaintiff and Plaintiff class:

12

a) have been restricted in their choices in portable digital media players, online music and video files due to the market share restrictions placed on consumers by Defendant's actions, and

b) have been subjected to inflated pricing of portable digital media players, online music and video files, and

c) are unreasonably and unnecessarily restricted as once an iPod is purchased and a collection of DRM music and DRM video files are purchased from iTunes Store, Plaintiff and Plaintiff class are barred from switching to a different brand of portable digital media player without losing the use of all the digital content that was legally purchased from the iTunes Store.

66. Defendant has not made any prior restitution to Plaintiff or Plaintiff class for these actions.

67. Plaintiff and Plaintiff class are entitled to recover attorneys' fees and costs pursuant to §501.211(2) of the Florida Statutes.

WHEREFORE, Plaintiff and Plaintiff class request judgment against Defendant, APPLE, INC. for damages, reasonably attorneys' fees and costs, and any further relief the Court may deem just and proper.

## Count II
## Monopolization in
## Violation of the Florida Antitrust Act

68. Plaintiff realleges and revers paragraphs 1 through 67 as if fully stated herein.

69. This is an action for damages for the violation of the Florida Antitrust Act, §542.19 of the Florida Statutes

70. Defendant corporation is a "person" as defined in §542.17(3) of the Florida

13

Statutes.

71.    Plaintiff and Plaintiff class are "persons" as defined in §542.17(3) of the Florida Statutes.

72.    At all times material hereto, Defendant was engaged in "trade or commerce" as defined in §542.17(4) of the Florida Statutes. Specifically, Defendant was engaged in the advertising, sale, and distribution of its iPod portable digital media players and iTunes Store music and video file files to the Plaintiff and Plaintiff class.

73.    The iPod portable digital media players and iTunes Store music and video files are all "commodities" as defined in §542.17(1) Florida Statutes.

74.    The sale of the iPod portable digital media players and the sale of digital music files and digital video files through the iTunes Store in this cause of action are "trade or commerce" within the scope of the Florida Antitrust Act, §542.17(4) of the Florida Statutes.

75.    At all times material hereto, Defendant is in possession of monopoly power in the portable digital media player market, the online music market and the online video market and has the power to control prices in these respective markets and has been able to exclude competition from these respective markets.

76.    Through its tying practices, Defendant has conducted itself through unfair methods of competition, anticompetitive conduct, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce. This conduct has had the effect of preventing or excluding competition in the portable digital media player market, the online music market and the online video market as the conduct harms the competitive process and thereby harms the consumers throughout the State of Florida.

77.    The only purpose for the aforementioned conduct was, and continues to be, for

14

the purpose of eliminating competition and is not for a legitimate business purpose.

78.    At all times material hereto, Defendant has, and continues to, willfully use a method, act or practice which is unlawful under §542.19 Florida Statues.

79.    Defendant knew, or should have known, that its conduct was in violation of the Florida Antitrust Act.

80.    Plaintiff and Plaintiff Class have suffered damages proximately caused by Defendant's violation of the Florida Antitrust Act in that:

 a) Plaintiff and Plaintiff class have been restricted in their choices in portable digital media players, online music and video files due to the market share restrictions placed on consumers by Defendant's actions, and

 b) Plaintiff and Plaintiff class have been subjected to inflated pricing of portable digital media players, online music and video files, and

 c) Plaintiff and Plaintiff class have been forced, through lack of competition and dominant market share, to purchase Defendant's products at a substantially higher price than Plaintiff and Plaintiff class would have paid in the absence of Defendant's unlawful conduct; and

 d) Plaintiff and Plaintiff class are unreasonably and unnecessarily restricted as once an iPod is purchased and a collection of music and video files is purchased from iTunes Store, Plaintiff and Plaintiff class are barred from switching to a different brand of portable digital media player without losing the use of all the digital content that was legally purchased from Defendant, and

 e) Defendant's practices have resulted in a decrease in competition.

81.    Defendant has not made any prior restitution to Plaintiff or Plaintiff class for these

15

actions.

82.    Plaintiff and Plaintiff class are entitled to threefold the damages pursuant to §542.22(1) of the Florida Statutes.

83.    Plaintiff and Plaintiff class are entitled to recover attorneys' fees and costs pursuant to §542.22(1) of the Florida Statues.

**WHEREFORE**, Plaintiff and Plaintiff class request judgment against Defendant, APPLE, INC., for the following relief:

A)    Declaring Defendant to be in violation of the Florida Antitrust Act; and

B)    Treble damages; and

C)    Reasonably attorneys' fees and costs; and

D)    Any further relief the Court may deem just and proper.

## Count III
### Attempted Monopolization in Violation of the Florida Antitrust Act

84.    Plaintiff realleges and revers paragraphs 1 through 67 as if fully stated herein.

85.    This is an action for damages for the violation of the Florida Antitrust Act, §542.19 of the Florida Statutes

86.    Defendant corporation is a "person" as defined in §542.17(3) of the Florida Statutes.

87.    Plaintiff and Plaintiff class are "persons" as defined in §542.17(3) of the Florida Statutes.

88.    At all times material hereto, Defendant was engaged in "trade or commerce" as defined in §542.17(4) of the Florida Statutes.  Specifically, Defendant was engaged in the advertising, sale, and distribution of its iPod portable digital media players and iTunes Store

music and video file files to the Plaintiff and Plaintiff class.

89.    The iPod units and iTunes music and video downloads are a "commodity" as defined in §542.17(1) Florida Statutes.

90.    The sale of the iPod music player and iTunes music and video downloads in this cause of action are "trade or commerce" within the scope of the Florida Antitrust Act, §542.17(4) of the Florida Statutes.

91.    Defendant has attempted to maintain monopoly power in the portable digital media player market, the online music market and the online video market and has the power to control prices in these respective markets and has been able to exclude competition from these respective markets.

92.    Through its tying practices, Defendant has conducted itself through unfair methods of competition, anticompetitive conduct, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce. This conduct has had the effect of preventing or excluding competition in the portable digital media player market, the online music market and the online video market as the conduct harms the competitive process and thereby harms the consumers throughout the State of Florida.

93.    The only purpose for the aforementioned conduct was, and continues to be, for the purpose of attempting to create a monopoly in these markets and to eliminate competition and is not for a legitimate business purpose.

94.    Defendant's conduct has a dangerous probability of success in controlling prices and/or destroying competition in the online music market.

95.    At all times material hereto, Defendant has, and continues to, willfully use a method, act or practice which is unlawful under §542.19 Florida Statues.

17

96.    Defendant knew, or should have known, that its conduct was in violation of the Florida Antitrust Act.

97.    Plaintiff and Plaintiff Class have suffered damages proximately caused by Defendant's violation of the Florida Antitrust Act in that:

a)   Plaintiff and Plaintiff class have been restricted in their choices in portable digital media players, online music and video files due to the market share restrictions placed on consumers by Defendant's actions, and

b)   Plaintiff and Plaintiff class have been subjected to inflated pricing of portable digital media players, online music and video files,  and

c)   Plaintiff and Plaintiff class have been forced, through lack of competition and dominant market share, to purchase Defendant's products at a substantially higher price than Plaintiff and Plaintiff class would have paid in the absence of Defendant's unlawful conduct; and

d)   Plaintiff and Plaintiff class are unreasonably and unnecessarily restricted as once an iPod is purchased and a collection of music and video files is purchased from iTunes Store,  Plaintiff and Plaintiff class are barred from switching to a different brand of portable digital media player without losing the use of all the digital content that was legally purchased from Defendant, and

e)   Defendant's practices have resulted in a decrease in competition.

98.    Defendant has not made any prior restitution to Plaintiff or Plaintiff class for these actions.

99.    Plaintiff and Plaintiff class are entitled to threefold the damages pursuant to §542.22(1) of the Florida Statutes.

18

100.    Plaintiff and Plaintiff class are entitled to recover attorneys' fees and costs pursuant to §542.22(1) of the Florida Statues.

**WHEREFORE**, Plaintiff and Plaintiff class request judgment against Defendant, APPLE, INC., for the following relief:

A)    Declaring Defendant to be in violation of the Florida Antitrust Act; and

B)    Treble damages; and

C)    Reasonably attorneys' fees and costs; and

D)    Any further relief the Court may deem just and proper.

## Demand for Jury Trial

101.    Plaintiffs demands trial by jury on all issues so triable.

Dated: August 24, 2007.

TRIPP SCOTT, P.A.
*Attorneys for Plaintiff*
110 S.E. Sixth Street, 15th Floor
Fort Lauderdale, Florida 33301
Telephone:  (954) 525-7500
Facsimile:  (954) 761-8475


By: _____
        Edward R. Curtis
        Florida Bar No. 236845
        William T. Cotterall
        Florida Bar No. 574651

19

436248v1 993991.0001

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:            0721198

FREDRICK BLACK, and          }
ANGEL FRANCO,                }          CLASS REPRESENTATION
                Plaintiffs,  }
-vs-                         }
                             }
APPLE, INC., a               }
foreign corporation,         }
                Defendant.   }
_____/

### PLAINTIFF'S FIRST REQUEST
### FOR PRODUCTION TO DEFENDANT

The Plaintiff, Frederick Black, requests the Defendant to produce for copying and/or

inspection at the office of the undersigned the following documents pursuant to Fla.R.Civ.P.

1.350:

### DEFINITIONS

As used in this Request to Produce, "documents" and "tangible things" shall include, but

is not limited to, writings of any kind; graphic, photographic or aural records or representations

of any kind; electronic, mechanical, electrical or computer records or representations of any

kind; including e-mail and other data compilations from which information can be obtained,

translated, if necessary, by you through detection devices into a reasonably usable form;

including originals, reproductions, drafts, identical copies and non-identical copies, whether

different from the original by reason of a notation made on the copy or otherwise.

As used in this Request to Produce, "persons" shall include natural persons,

proprietorships, corporations, public corporations, municipal corporations, state governments,

436660v1 993991.0001

local governments, governmental agencies, political subdivisions, partnerships, groups, associations or other business or public organizations.

If any document called for by this Request for Production is withheld because you claim that information is contained in a document, tangible thing or communication protected by the attorney-client privilege, work product privilege, or other recognized privilege, you are requested to so state, specifying for each such document, tangible thing or communication, its title, subject matter, sender, author, recipients of copies, each person to whom the original or any copy was circulated, the parties to the communication, the persons present during the communication, the purpose of the communication, the basis upon which the privilege is claimed, and the Request to Produce to which the document, tangible thing or communication is responsive.

"Complaint" refers to the Complaint filed by Plaintiff in this action.

## DOCUMENT REQUESTS

1. All documents Defendant references in support of it's responses to Plaintiff's First Set of Interrogatories served in conjunction with this.

2. All documents Defendant has produced in all other litigation matters involving tying allegations as Plaintiff alleges in the Complaint.

3. Copies of any and all insurance policies which may provide coverage in this action.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above was served along with the

Complaint to the Registered Agent for Defendant.

TRIPP, SCOTT, P.A.
Counsel for Plaintiff
110 S.E. Sixth Street, 15th Floor
Fort Lauderdale, Florida 33301
Telephone: 954-525-7500
Facsimile: 954-761-8475


By _____
    Edward R. Curtis
    Florida Bar No. 236845
    William T. Cotterall
    Florida Bar No. 574651

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: 0721198

CLASS REPRESENTATION

FREDRICK BLACK,  and
ANGEL FRANCO,
          Plaintiffs,

-vs-

APPLE, INC., a
foreign corporation,
          Defendant.

_____/

## NOTICE OF SERVING PLAINTIFF'S
## FIRST SET OF INTERROGATORIES ON DEFENDANT

Plaintiff, Frederick Black, by and through the undersigned counsel, hereby propounds his

First Set of Interrogatories to Defendant, Apple, Inc., to be answered within thirty (30) days from the

date of service, pursuant to Rule 1.340, Florida Rules of Civil Procedure.

    I HEREBY CERTIFY that a true and correct copy of the above was served along with the

Complaint to the Registered Agent for Defendant.

                    TRIPP, SCOTT, P.A.
                    Counsel for Plaintiff
                    110 S.E. Sixth Street, 15th Floor
                    Fort Lauderdale, Florida 33301
                    Telephone:  954-525-7500
                    Facsimile:  954-761-8475

                    By _____
                        Edward R. Curtis
                        Florida Bar No. 236845
                        William T. Cotterall
                        Florida Bar No. 574651

1

436585v1 993991.0001

## GENERAL INSTRUCTIONS

1.    The answers to these interrogatories must include all information known to Defendant, including its attorneys and all persons acting on its behalf or under its control.

2.    If the answer to an interrogatory or to a subsection of an interrogatory is unknown, state and include the name and address of any person or organization that might know the necessary information.

3.    If an interrogatory cannot be answered in full, answer to the extent possible, specify the reasons for the Defendant's inability to answer the remainder, and state Defendant's information, knowledge, or belief concerning the unanswered portion.

4.    If the answer to the interrogatory is not presently known, state and respond within twenty (20) days of the time the answer to the interrogatory becomes known.

5.    These interrogatories are continuing in nature. If after answering the interrogatories, Defendant obtains or becomes aware of any further information responsive to it, it must submit a supplementary answer.

6.    If Defendant withholds any documents on the claim of privilege, set forth the grounds of the claimed privilege and provide the following information separately about each such document: general description of the subject matter, author, recipient(s), date, number of copies prepared, by whom the copies were prepared, the identity of each person who has received a copy, and the custodian of the document.

7.    If Defendant claims that any document has been lost, destroyed, or otherwise becomes unavailable since its preparation or receipt, provide the following information separately about each document: general description of the subject matter, author, recipient(s), date, last custodian of the document or copies of it, and the full particulars or circumstances whereby the document was lost, destroyed, or otherwise became unavailable.

8.    State the source, custodian, and location of each document provided in response to these interrogatories.

9.    You are to serve the signed, separate verification page with your written responses within thirty (30) days after date service of this First Set of Interrogatories.

## DEFINITIONS

1.    For the purposes of these interrogatories, the word "documentary" or "documentary materials" means, without limitation, any writing and any other tangible thing in your custody, possession, control or that of your representatives and/or attorneys, whether printed, recorded, reproduced by any process, photocopied, or written or produced by hand, including, but not limited to, letters, reports, agreements, subcontracts, purchase orders, communications, including correspondence, telegrams, memoranda, summaries or records of personal conversations, diaries, calendars, forecasts, photographs, tape recordings, models, statistical statements, graphs, laboratory and engineering reports and notebooks, charts, plans, drawings, estimates of cost, budgets, minutes or records of conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports and/or summaries of interviews, reports, and/or summaries of investigations, opinions or reports of consultants, appraisals, records, reports or summaries of negotiations, brochures, pamphlets, circulars, drafts of any document, revisions of drafts of any document, canceled checks, bank statements, billings, deposit agreements, invoices, delivery tickets, sales journals, financial records, receipts and any other original or photocopied document on paper. Any

2

comment or notation appearing on any document, and not a part of the original text, is to be considered a separate "document." Any draft or preliminary form of any document is also to be considered a separate "document." Specific reference to any other type of document in the ensuing interrogatories shall not be construed as in any respect limiting the generality of the foregoing definition.

2. The term "communication" shall mean any transfer or exchange between two or more persons of any information, whether by written or oral means, including, but not limited to personal conversation, correspondence, telephone calls, and telegrams. This definition includes all communications for which you claim a privilege.

3. The term "you" or "Defendant" shall mean APPLE, INC..

4. The term "address" shall mean present or last-known address.

5. The term "identify" refers to stating the identity.

6. The term "identity" (of an individual) refers to the name, present or last-known address, employer and job title or classification.

7. The term "identity" (of a document) refers to the title, date, any identifying numbers and all other identifying designations, and the number of pages.

8. The term "individual" refers to a natural person.

9. The term "person" refers to a natural or artificial person as defined by Florida laws.

10. The term "iTunes Store" shall refer to the Apple iTunes Store.

11. The term "iPod" shall refer to the Apple iPod music player.

12. The term "Complaint" shall refer to Plaintiffs' Complaint in this styled action.

3

## INTERROGATORIES TO DEFENDANT

1.    Identify the individual(s) responsible for the preparation of the answers to these interrogatories or otherwise assisting in preparation of the answers, including their names, residence and business address, business title, telephone numbers, and relationship, if any, to Apple. Inc.

ANSWER:

2.    State how many music files have been sold, by year, to accounts in the State of Florida through the iTunes Store from November 1, 2001 through the present.

ANSWER:

3.    State how many digital rights management ("DRM") protected music files have been sold, by year, to accounts in the State of Florida through the iTunes Store from November 1, 2001 through the present.

ANSWER:

4

4.    State how many video files have been sold, by year, to accounts in the State of Florida through the iTunes Store from November 1, 2001 through the present.

ANSWER:

5.    State how many digital rights management ("DRM") protected video files have been sold, by year, to accounts in the State of Florida through the iTunes Store from November 1, 2001 through the present.

ANSWER:

6.    State how many iPods have been sold, by year, in the State of Florida from November 1, 2001 through the present.

ANSWER:

436585v1 993991.0001

7.    State the total market share you have in the following markets:
   a) The online music market as defined in Paragraph 21 of the Complaint.
   b) The online video market as defined in Paragraph 22 of the Complaint.
   c) The portable digital media player market as defined in Paragraph 23 of the Complaint.

ANSWER:

8.    Have you performed any analysis, study or research on licensing "Fairplay" to non-Apple, Inc. entities?

ANSWER:

9.    If your answer to Interrogatory No. 8 is "yes", please state:
   a) When each of these were performed; and
   b) What each of these are referred to as internally; and
   c)  Who performed them; and
   d) Identify each document that reflects said analysis, study or research.

ANSWER:

436585v1 993991.0001

10.    Have you performed any analysis, study or research on obtaining licensing for WMA to use in conjunction with the iPod line or iTunes?

ANSWER:

11.    If your answer to Interrogatory No. 10 is "yes", please state:
    a)  When each of these were performed; and
    b)  What each of these are referred to as internally; and
    c)   Who performed them; and
    d)  Identify each document that reflects said analysis, study or research.

ANSWER:

12.    List any and all litigation you have been, or currently are, a party to as it relates to the tying of the iPod and iTunes as alleged in the Complaint. Include in your answer the following:
    a)  whether you were a plaintiff or defendant;
    b)  the legal allegations of the litigation; and
    c)  the case style of the litigation; and
    d)  if the litigation is still open; and
    e)  if the litigation is closed, whether the case settled, was dismissed, or if there was a verdict.

ANSWER:

13.    List any settlements you have entered in cases involving the tying of the iPod and iTunes, as alleged in the Complaint.


ANSWER:


14.    Have you paid any court judgments in cases involving the tying of the iPod and iTunes, as alleged in the Complaint.


ANSWER:


15.    Have you paid any claims to any members of the potential class in Florida.


ANSWER:


8

_____

Apple, Inc.

STATE OF _____ )
                        )ss:
COUNTY OF _____ )

    BEFORE ME the undersigned authority, personally appeared _____, who swears and deposes that the information provided in the above is true and correct to the best of her knowledge and belief.

    SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2007.

_____
Notary Public, State of _____

Print Name:_____

_____ Personally known by me, or

_____ Produced Identification:

_____
Type of Identification

My Commission Expires:

9

# RETURN OF SERVICE

_LAURA LASA_

**State of Florida**                    **County of Broward**                    **Circuit Court**

Case Number: 07-21186-08

PLAINTIFF:
**FREDERICK BLACK**

vs.

DEFENDANT:
**APPLE, INC.**



For:
Edward R. Curtis, Esq.
TRIPP SCOTT, P.A.
110 S.E. 6th Street
15th Floor
Ft. Lauderdale, FL  33301

Received by ACCURATE SUPPORT RESOURCES on the 27th day of August, 2007 at 4:14 pm to be served on
**APPLE, INC., C/O RA, CT CORP., 1200 PINE ISLAND ROAD, PLANTATION, FL.**

I, Jeff A. Lang, do hereby affirm that on the **29th day of August, 2007** at **9:25 am, I:**

Served the within named corporation by delivering a true copy of the **Summons, Complaint, Request for
Production of Documents, Interrogatories** with the date and hour of service endorsed thereon by me to
DONNA MOCH @ CT CORP. as **Registered Agent** of the within named corporation, in compliance with State
Statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Special Process Server, in good
standing, in Broward County, Florida, the County in which this process was served. Under penalty of perjury, I
declare that I have read the foregoing Verified Return of Service and that the facts stated in it are true.

**Jeff A. Lang**
Sps #19

**ACCURATE SUPPORT RESOURCES**
**1840 S.E. 4th Avenue**
**Suite-2 B**
**Ft. Lauderdale, FL  33316**
**(954) 761-9977**
Our Job Serial Number: 2007007511

Copyright © 1992-2006 Database Services, Inc. - Process Server's Toolbox V5.9n

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

FREDERICK BLACK,

CASE NO.: 07-21186 (08)

      Plaintiff,

vs.

APPLE, INC.,

      Defendant.

_____/

## NOTICE OF UNAVAILABILITY

Notice is hereby given that Edward R. Curtis, Esquire, Attorney for Plaintiff, FREDERICK BLACK, will be unavailability from Friday, October 5, 2007 through and including Monday, October 15, 2007. It is requested that no hearings or depositions be scheduled and that no motions, discovery requests or pleadings be filed that require a timely response during this time period.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to David C. Kiernan, Esquire, Jones Day, 555 California Street, 26th Floor, San Francisco, CA 94104-1500, this 19th day of September, 2007.

TRIPP SCOTT, P.A.
Attorneys for Plaintiff
110 SE 6th Street, 15th Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 525-7500
Facsimile: (954) 832-9236

By _____
    Edward R. Curtis, Esquire
    Florida Bar No.: 236845

440261v1 993991.0001

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

FREDRICK BLACK,

     Plaintiffs

v.

APPLE, INC., a
foreign corporation,

     Defendant.
_____/

## DECLARATION OF LEROY ELKIN IN SUPPORT OF DEFENDANT APPLE INC.'S NOTICE OF REMOVAL

I, LEROY ELKIN, hereby declare as follows:

1.     I have been employed with Apple Inc. (Apple) since December 10, 1984. I am Vice President, Finance, located in Cupertino, California. I became Vice President on July 17, 2003. I make the statements in this declaration based upon my personal knowledge and corporate records maintained by Apple in the ordinary course of business. If called upon to do so, I could and would testify thereto under oath.

2.     Apple is incorporated under the laws of the State of California and has its principal place of business in Cupertino, California.

3.     According to Apple's records, more than one million iPods have been sold in Florida from November 2001 to the present.

4.     When the first iPod was introduced in 2001, the retail price was $399. Today, the retail prices of iPods range depending on the model, from $79 for the iPod shuffle to $399 for the 16GB iPod touch.

I declare under penalty of perjury under the laws of the United States of America and the laws of the State of California that the foregoing is true and correct.

Dated:  September 27, 2007

By: _____
        Leroy Elkin

SFI-570603v1

JS 44 (Rev. 11/05)

**CIVIL COVER SHEET**

**07-61395**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**

Frederick Black

**DEFENDANTS**

Apple, Inc., a foreign corporation

**CIV-ZLOCH**

**(b)** County of Residence of First Listed Plaintiff   Broward County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Santa Clara County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, **MAGISTRATE JUDGE** LAND INVOLVED.

**SNOW**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Edward R. Curtis 236845, William T. Cotterall 574651
TRIPP SCOTT, P.A., 110 S.E. Sixth Street, 15th Floor
Fort Lauderdale, FL 33301        (954) 525-7500

Attorneys (If Known)

Janet T. Munn, EPSTEIN BECKER & GREEN, P.C.   305-375-7592
200 S. Biscayne Blvd., Suite 2100, Miami, FL 33131

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*FRE= 07CV61395 Zloch/Snow*

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☑ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 330 Federal Employers' Liability ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | | | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☑ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**
(See instructions second page:)
a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☑ YES ☐ NO
JUDGE Honorable James Ware   DOCKET NUMBER Case No. C05-00037 JW

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§ 1332. This is a diversity class action suit alleging violations of Florida State Antitrust and Unfair Competition law.
LENGTH OF TRIAL via >14 days estimated for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ greater than $5,000,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD   Janet T. Munn   DATE 9/28/07

FOR OFFICE USE ONLY
AMOUNT $350.00   RECEIPT # 967425   IFP
09/28/07