# EXHIBIT A

xxx

Dockets.Justia.com

ORIGINAL

FILED

'06 JUL 21 AM 10: 5?

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  LERACH COUGHLIN STOIA
     GELLER RUDMAN & ROBBINS LLP
2  JOHN J. STOIA, JR.
   BONNY E. SWEENEY
3  CHRISTOPHER M. BURKE
   655 West Broadway, Suite 1900
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
   BonnyS@LerachLaw.com
6  ChrisB@LerachLaw.com

7  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
8  ANDREW S. FRIEDMAN
   ELAINE A. RYAN
9  TODD D. CARPENTER
   2901 North Central Avenue, Suite 1000
10 Phoenix, AZ 85012
   Telephone: 602/274-1100
11 602/274-1199 (fax)
   afriedman@bffb.com
12 eryan@bffb.com
   tcarpenter@bffb.com
13
   Attorneys for Plaintiffs
14

15                 UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                                           C 06      4457
   MELANIE TUCKER, On Behalf of Herself  )  Case No.                           HRL
18 and All Others Similarly Situated,       )
                                            )  CLASS ACTION
19                          Plaintiff,       )
                                            )  COMPLAINT FOR VIOLATIONS OF
20         vs.                               )  SHERMAN ANTITRUST ACT,
                                            )  CARTWRIGHT ACT, CALIFORNIA
21 APPLE COMPUTER, INC., a California        )  UNFAIR COMPETITION LAW,
   Corporation,                             )  CONSUMER LEGAL REMEDIES ACT
22                                          )  AND MONOPOLIZATION OF BUSINESS
                            Defendant.      )  PRACTICES
23                                          )
                                            )
24                                             DEMAND FOR JURY TRIAL

25

26

27

28

1            **INTRODUCTION AND MARKET DEFINITIONS**

2            1.      Plaintiff Melanie Tucker on her own behalf and behalf of the classes defined herein

3    (the "Classes"), based on information and belief and investigation of counsel, except for information

4    pertaining to the named Plaintiff, which is based on her personal knowledge, alleges as follows:

5            2.      Apple Computer, Inc. ("Apple" or "Defendant") owns and operates iTunes Music

6    Store ("Music Store"), an Internet site that offers digital music and digital video computer files for

7    online purchase and download ("Online Music" and "Online Video"). Unlike most Internet sites,

8    Music Store is accessed with proprietary Apple software rather than with a Web browser. Apple

9    designs the hardware and software of its iPod Digital Music Player while manufacturing is

10   outsourced to Asia.

11           3.      The "Online Music market" is defined as the market for digital music delivered to the

12   consumer by way of Internet download. Online Music presents consumers enormous advantages

13   over purchasing music in CD form at retail stores. Online Music stores offer for sale hundreds of

14   thousands of songs at once, many times more than even the largest traditional music retailer. Online

15   Music is attractive to consumers because it allows them to purchase a la carte only the songs that

16   they want rather than having to buy an entire CD album in order to get only one or two desirable

17   songs.

18           4.      Online Music is also attractive because it is more convenient, reliable, and better for

19   the environment. Consumers do not have to drive to a store to make their purchase, trucks do not

20   have to transport the CDs from factory to warehouse to retailer, and there is no material or packaging

21   produced only to be thrown away. Online Music also promises superior audio fidelity over time

22   because unlike CDs Online Music lasts indefinitely and cannot wear out or break.

23           5.      Apple has approximately an 83% market share of the Online Music market.

24           6.      The "Online Video market" is defined as the market for digital video files that are

25   purchased and downloaded via the Internet that can be viewed both on a home computer and a video

26   enabled Digital Music Player. Popular examples of Online Video include commercial-free television

27   shows, music videos, and short films. Just as with Online Music, the variety, reliability,

28

COMPLAINT -
                                                                                                    - 1 -

1   convenience, and environmental friendliness of Online Video make it superior to DVDs purchased

2   from traditional retail outlets.

3          7.    Apple's share of the Online Video market is at least 75%.

4          8.    The "Digital Music Player market" is defined as the market for portable battery-

5   powered devices that can store and play large numbers of digital music computer files. For

6   technology savvy consumers, Digital Music Players are enormous improvements over portable CD

7   players. While a traditional CD can hold no more than 15 to 25 songs, Digital Music Players, by

8   playing music that has been compressed into small digital files, can store from 150 to more than

9   20,000 songs. Even larger Digital Music Players are now typically only a fraction of the size of a

10  typical portable CD player, and by having few moving parts are more reliable and offer a much

11  longer battery life. Digital Music Players also dispense with the need to carry around CDs and allow

12  consumers to organize, categorize, and play their music in whatever manner or order they desire.

13  Further advantages include superior skip protection and in many models the ability to play video

14  games, play video files, and store digital photographs.

15         9.    There are two major segments of the Digital Music Player market, those that store

16  music files on miniature hard drives and those that store music using flash memory. Apple's iPod

17  line of Digital Music Players has more than a 90% market share of the hard drive based player

18  market, by far the largest of the two segments over the Class Period (as defined herein in the Class

19  Action Allegations section), and approximately a 70% share of the flash memory based segment of

20  the market.

21         10.   The three relevant product markets are the markets for Online Video, Online Music,

22  and Digital Music Players, as defined above, or collectively "the digital music markets."

23         11.   The relevant geographic market for all three product markets is the United States.

24         12.   Apple has engaged in tying and monopolizing behavior, placing unneeded and

25  unjustifiable technological restrictions on its most popular products in an effort to restrict consumer

26  choice and restrain what little remains of its competition in the digital music markets. Apple's CEO

27  Steve Jobs has himself compared Apple's digital music dominance to Microsoft's personal computer

28

COMPLAINT -                                                                                              - 2 -

1    operating system dominance, calling Apple's Music Store "the Microsoft of music stores" in a

2    meeting with financial analysts.

3        13.    Apple has repeatedly acted to foreclose even the possibility of competition by using

4    its market power to force consumers to choose its products not based on their merits but instead

5    because technological restrictions and incompatibilities prevent them from buying its competitors'

6    products.

7        14.    Apple deliberately makes digital music purchased at the Music Store inoperable with

8    its competitors' Digital Music Players. Thus, in order to play music from Apple's Music Store, the

9    dominant Online Music retailer, the consumer's only option in the Digital Music Player market is

10    Apple's iPod. Given that other companies' products cannot even begin to compete for the business

11    of most consumers, Apple can and does sell the iPod at prices far above those that would prevail in a

12    competitive market.

13        15.    Conversely, Apple also makes the iPod unable to play music sold at its rivals' Online

14    Music stores. Consumers who have iPods can only buy Online Music to play on it from Apple's

15    Music Store, allowing Apple to further entrench its nearly complete monopoly in both of these

16    markets.

17        16.    In the past year, as improved hard drive and video compression technology have

18    made playing video content such as television shows on Digital Music Players feasible, Apple has

19    begun using these same illegal tactics to block consumers from purchasing and playing Online Video

20    from its rivals' online stores and video-enabled Digital Music Players.

21                                    **PARTIES**

22        17.    Defendant Apple is a corporation organized under the laws of the State of California

23    and has its principal place of business in Cupertino, California. Though best known as a computer

24    hardware and software company, the majority of Apple's revenues and profits now derive from its

25    Online Video, Online Music, and Digital Music Player businesses.

26        18.    Plaintiff Melanie Tucker resides in San Diego County, California. On or about April

27    2005, while in San Diego County, Ms. Tucker purchased a 20GB iPod from the Defendant online at

28    the iTunes Music Store.

COMPLAINT -
                                                                    - 3 -

**PLAINTIFF'S ALLEGATIONS**

1

2       19.    Beginning in April 2005, and periodically throughout the Class Period, Ms. Tucker

3  purchased music from the iTunes Music Store, and downloaded it from the Music Store to her

4  personal computer. Ms. Tucker then selected and uploaded the purchased music from her personal

5  computer to her iPod.

6       20.    Ms. Tucker downloaded the songs she purchased from the Music Store and utilized

7  her iPod in accordance with the instructions provided in the packaging and on the iTunes Music

8  Store website.

**JURISDICTION AND VENUE**

9

10       21.    Jurisdiction is conferred upon this judicial district pursuant to 15 U.S.C. §§15 and 26,

11  and 28 U.S.C. §§1331 and 1337.

12       22.    Venue is proper in this district pursuant to 15 U.S.C. §§15, 22 and 26, and 28 U.S.C.

13  §1391 because Defendant transacts business in this district, Defendant has its principle corporate

14  office in this district, and because thousands of Class members are located in this district.

15  Additionally, a substantial part of the interstate trade and commerce involved and affected by the

16  alleged violations of the antitrust laws was and is carried on in part within this district. The acts

17  complained of have had, and will have, substantial anti-competitive effects in this district. A

18  substantial number of putative plaintiffs reside in this district. Finally, one other case is pending in

19  this district concerning the subject matter alleged herein.

**TRADE AND COMMERCE**

20

21       23.    During the Class Period, Apple marketed, distributed, and sold Digital Music Players,

22  Online Music, and Online Video in a continuous and uninterrupted flow of intrastate and interstate

23  commerce throughout the United States.

**CLASS ACTION ALLEGATIONS**

24

25       24.    Plaintiff brings this action on behalf of herself, and all others similarly situated,

26  pursuant to Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure. Plaintiff seeks to

27  represent the following Classes:

28

**Injunctive Relief Class**
**(for injunctive relief under the Clayton Act, 15 U.S.C. §26)**

25.    All persons or entities in the United States (excluding federal, state and local governmental entities, Apple, its directors, officers and members of their families) that during the Class Period purchased an Apple iPod or who purchased audio or video content from Apple's Music Store from April 28, 2003 through the conclusion of the trial of this matter.

**Direct Purchaser Damages Class**
**(for damages under the Clayton Act, 15 U.S.C. §15)**

26.    All persons or entities in the United States (excluding federal, state and local governmental entities, Apple, its directors, officers and members of their families) that during the Class Period purchased an Apple iPod directly from Apple or video content from Apple's Music Store from April 28, 2003 through the conclusion of the trial of this matter.

27.    The Classes are so numerous that joinder of all members is impractical.  There are thousands of members in each Class who are geographically dispersed throughout the United States.

28.    Plaintiff's claims are typical of the claims of the members of the Classes because Plaintiff and all Class members were damaged by the same wrongful conduct of the Defendant alleged herein.

29.    There are questions of law and fact common to the Classes which predominate over any questions affecting only individual Class members.  Such common questions include:

        (a)    the definition of the relevant markets;

        (b)    Apple's market power within these markets;

        (c)    whether Apple monopolized and continues to monopolize the relevant markets;

        (d)    whether Apple attempted to monopolize and continues to attempt to monopolize the relevant markets;

        (e)    whether the contractual conditions Apple imposes upon its customers are unconscionable;

COMPLAINT -

- 5 -

1              (f)    whether Apple's conduct caused damage to the Plaintiff and members of the

2   Classes, including the degree to which prices paid by the Classes are higher than the prices that

3   would be paid in a market free from tying, monopolization, and other illegal conduct; and

4              (g)    the appropriateness of injunctive relief to restrain ongoing and future

5   violations of the law.

6        30.    The claims of the Plaintiff are typical of the claims of the Classes, and Plaintiff has no

7   interest adverse to the interest of other members of the Classes.

8        31.    Plaintiff will fairly and adequately protect the interests of the Classes and has retained

9   counsel experienced and competent in the prosecution of complex class actions and antitrust

10  litigation.

11       32.    A class action is superior to other available methods for the fair and efficient

12  adjudication of the controversy. Such treatment will permit a large number of similarly situated

13  persons to prosecute their common claims in a single forum simultaneously, efficiently, and without

14  duplication of effort and expense that numerous individual actions would engender. Class treatment

15  will also permit the adjudication of relatively small claims by many Class members who could not

16  afford on their own to individually litigate an antitrust claim against a large corporate defendant.

17  There are no difficulties likely to be encountered in the management of this class action that would

18  preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient

19  adjudication of the controversy.

20                    **APPLE ENGAGES IN ILLEGAL TYING CONDUCT**

21       33.    Online Music comes in both unprotected and protected digital file formats. Unlike

22  unprotected formats, protected formats include technological encumbrances designed to prevent

23  consumers from making illegal unauthorized copies of the digital file.

24       34.    Given the increasing problem of music piracy, the major record companies that

25  control the copyrights to most popular music are generally unwilling to license their music for online

26  sale except in protected formats.

27       35.    The protected music file format used by most Online Music stores is the WMA

28  format. Online Music stores that sell their protected music files in WMA format include America

COMPLAINT -

1  Online, Wal-Mart, Napster, MusicMatch, Best Buy, Yahoo! Music, FYE Download Zone, and

2  Virgin Digital.

3           36.    Apple's iPod is alone among mass-market Digital Music Players in not supporting the

4  WMA format.

5           37.    There are no technological limitations preventing the iPod from supporting WMA

6  playback. Apple outsources most of the production of the iPod to third party manufacturers in Asia.

7  One third party part used in the iPod is its "core processor," the Portal Player System-On-A-Chip.

8  The System-On-A-Chip by default supports the WMA format. Apple, however, deliberately

9  designed the iPod's software so that it would only play a single protected digital format, Apple's

10 FairPlay-modified AAC format. Deliberately disabling a desirable feature of a computer product is

11 known as "crippling" a product, and software that does this is known as "crippleware."

12          38.    The software Apple has designed for the iPod, which disables the iPod's inherent

13 ability to play WMA format files, is thus a classic example of crippleware. By preventing the iPod

14 from playing WMA or any other protected music format besides FairPlay-modified AAC format,

15 iPod owners' only option to purchase Online Music is to purchase from Apple's Music Store. This

16 conduct constitutes an illegal tie in violation of antitrust laws.

17          39.    In place of the Portal Player System-On-A-Chip, Apple uses the SigmaTel

18 STMP3550 in its low end iPod Shuffles. Like the Portal Player System-On-A-Chip, the SigmaTel

19 STMP3550 was designed to decode and play WMA files and does indeed play them on every Digital

20 Music Player that contains the STMP3550 chip except the iPod. As in its higher end models,

21 Apple's crippleware operating system software prevents the iPod Shuffle from playing WMA files.

22          40.    The cost to Apple of licensing the WMA format would likely not exceed $800,000

23 per year or approximately three cents per iPod sold in 2005.

24          41.    Just as Apple deliberately makes the iPod incapable of playing any Online Music not

25 purchased on Music Store, it makes the FairPlay-modified AAC music files purchased on Music

26 Store incapable of being played by other Digital Music Players. Thus, consumers who have

27 purchased Online Music from Apple to play on their home computers will have no choice but to buy

28 an iPod if they want to play their music on a Digital Music Player.

COMPLAINT -

- 7 -

42. Other consumers first buy an iPod and later buy Online Music for their iPod from Apple's Music Store. As described above, such consumers are not able to purchase Online Music for play on iPod from any company besides Apple. After purchasing their digital music library from Apple, these consumers are locked into making all future Digital Music Player purchases from Apple. They might want to buy a non-Apple Digital Music Player for a family member or to replace their original Apple iPod, but to do so would mean they could not utilize any of the songs they purchased from Apple in their new music player.

43. This refusal to allow its FairPlay-modified AAC music files to be played on any Digital Music Player besides the Apple iPod constitutes an illegal tie in violation of antitrust laws.

44. These ongoing injuries can be halted and abated by an injunction that would compel Apple to make iPod compatible with Online Music and Online Video purchased on stores other than Music Store, and to allow competitors to sell their music and video content using Apple's iTunes platform.

45. Apple has acted on grounds generally applicable to the Injunctive Relief Class, thereby making final injunctive relief appropriate with respect to the Class as a whole. Such an injunction would be of immense benefit to the Plaintiff, the Class, and the general public while imposing only a trifling burden upon Apple.

### IN EUROPE APPLE'S MONOPOLY PRICING AND TYING CONDUCT HAS BEEN THE TARGET OF FORMAL GOVERNMENT INVESTIGATIONS, PRIVATE LAWSUITS, AND LEGISLATION SPECIFICALLY DESIGNED TO COUNTER APPLE'S ANTI-COMPETITIVE CONDUCT

46. European antitrust authorities are currently investigating Apple's pricing practices in the European Union. Leveraging its worldwide monopoly power in the Online Music market, Apple has set the price of music downloads in the United Kingdom substantially higher than in the United States and in countries that use the Euro as their currency, and maintains this higher price by placing technological restrictions on residents of the United Kingdom from purchasing music from Apple's non-UK Music Store sites.

COMPLAINT -

- 8 -

1      47.    In France, a consumer rights organization has filed suit against Apple for deliberately

2    making the iPod and Online Music purchased from Music Store incompatible with competing

3    products.

4      48.    Also in France, the two chambers of Parliament have passed slightly different

5    versions of a bill that would force Apple to stop making music files purchased on its Music Store

6    incompatible with Digital Music Players other than the Apple iPod.

7      49.    Also in France, the nation's Parliament has approved a law that specifically was

8    designed to force Apple to allow other companies to sell protected music files on the iPod, and to

9    force Apple to make music purchased on its Music Store compatible with competing Digital Music

10    Players. In an interview, a French official explained that his government believes that "[s]omeone

11    who buys a song has to be able to listen to it, no matter which device or the software of choice" and

12    that Apple's designing its products to prevent consumers from using other companies' products is

13    "not in the interest of the consumer, nor the interest of the creator. It only benefits the company and

14    we're there to defend the consumer, our citizens." Apple has unsuccessfully lobbied against the law,

15    calling it "state sponsored piracy."

16      50.    Denmark's Minister of Culture plans on introducing in 2007 legislation similar to the

17    French law.

18      51.    The Office of the Norwegian Consumer Ombudsman on July 6, 2006 ruled that Apple

19    violates Norwegian law by tying purchases of music from its Music Store to the purchase of an

20    Apple iPod. Using language that echoes the American common law standard of an unconscionable

21    contract, Ombudsman Bjørn Erik Thon ruled:

22           [Apple] goes to great lengths to ensure that its standard customer contract protects
             the company's own interest. . . .  "The contracts are both vague and hard to
23           understand for the customers, and they're clearly unbalanced to disfavor the
             customer. The consumers are clearly the inferior partner in the contract, and this in
24           itself is illegal . . . ." [¶¶]  "[Apple's restrictive] technology renders the customers
             without rights in dealing with a company which on a whim can dictate what kind of
25           access customers will have to products they have already paid for . . . ."

26      52.    Sweden and Denmark's antitrust regulators have indicated that they are likely to

27    duplicate any action taken against Apple by Norway. The *Financial Times* of London reported on

28

COMPLAINT -                                                                          - 9 -

1   June 14, 2006 that Finnish antitrust authorities are considering joining these three countries in their

2   joint action against Apple.

3                                    **ANTITRUST INJURY TO CONSUMERS**

4          53.     Through the unlawful acts and practices described above Apple has harmed

5   competition, consumers and innovation by causing consumers to pay supracompetitive prices for

6   iPod Digital Music Players.  Those practices, described herein, have also allowed Apple to obtain

7   and maintain illegal monopolies in the aforementioned markets.

8          54.     By preventing consumers who have purchased music files from Music Store from

9   playing their music on its competitors' Digital Music Players, Apple has been able to charge

10  purchasers of the iPod Digital Music Player a supracompetitive price.

11         55.     Likewise, by preventing owners of iPods from buying music from any Online Music

12  retailer other than Music Store, Apple deters consumers from even considering doing business with

13  its competitors' music and video stores, allowing it to monopolize these markets.

14         56.     Consumers have been further injured as innovative companies such as Dell, Olympus,

15  and Rio have begun to withdraw from the Digital Music Player markets.  These companies had little

16  choice but to give up and exit the market because Apple's anticompetitive conduct excluded them

17  from reaching the majority of their potential customers no matter how much cheaper or how much

18  better their products were.  There can be no real competition in the Online Music, Online Video, and

19  Digital Music Player markets as long as Apple's conduct forecloses even the possibility of its

20  competitors reaching most potential customers.

21         57.     This anti-competitive conduct has deterred the development of competing products,

22  damaging consumers by depriving them of a choice of products with different and possibly superior

23  sets of features.

24         58.     Normally markets for consumer electronic goods such as Digital Music Players are

25  characterized by intense competition and narrow profit margins.  Apple's pricing in the Digital

26  Music Player market, by contrast, is exactly that of a monopolist, excessive and arbitrary.  For

27  example, the only difference between Apple 1GB and 4GB models of its iPod Nano is the capacity

28  of their NAND flash memory parts.  At current spot prices in the NAND flash memory market the

COMPLAINT -

                                                                                              - 10 -

1  1GB part costs approximately $4.15, while the 4GB part costs approximately $9.67. Nonetheless,

2  Apple charges an additional one hundred dollars for the 4GB model.

3        59.    Plaintiff and the Classes have been injured by this anti-competitive conduct and will

4  continue to suffer injury unless the relief prayed for herein is granted.

5                                **COUNT I: TYING**

6        **(For Violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1)**

7        **Violations Resulting from Unlawful Tying or Bundling of Online**
         **Video and FairPlay Protected Music Files to the Apple iPod**
8
9        60.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth
10  above on behalf of the Classes.

11        61.    Apple has substantial market power in each of the distinct Digital Music Player,

     Online Music, and Online Video markets.
12
13        62.    All of these markets are for goods and not services.

14        63.    There is no appropriate or legitimate business justification for Apple's use of

15  technological restrictions to force those who purchase Apple's Digital Music Players to also

16  purchase only Online Music and Online Video from Music Store that would counterbalance the clear

     anti-competitive effects of its tying conduct, including the foreclosure of competition in the Online
17
18  Music and Online Video.

19        64.    This unlawful conduct has harmed competition in that market and has caused injury

20  to every person who has purchased Online Music and Online Video from Music Store. The supply

21  and selection of products available is lower than it would be in a competitive market; and the number

     and effectiveness of competitors have been diminished by unlawful means.
22
23        65.    The anti-competitive conduct described herein has damaged Plaintiff and the alleged

24  Classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §1.

25        **Violations Resulting from Unlawful Tying of the Apple**
         **iPod to Online Video and FairPlay Protected Music Files**

26        66.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth

27  above on behalf of the Classes.

28

COMPLAINT -                                                                      - 11 -

1      67.     Apple has substantial market power in each of the distinct Digital Music Player,

2  Online Music, and Online Video markets.

3      68.     All of these markets are for goods and not services.

4      69.     There is no appropriate or legitimate business justification for Apple's use of

5  technological restrictions to force those who purchase Online Music and Online Video from Music

6  Store to also purchase only Apple's Digital Music Players that would counterbalance the clear

7  anticompetitive effects of its tying conduct, including the foreclosure of competition in the Digital

8  Music Player market.

9      70.     This unlawful conduct has harmed competition in that market, and has caused injury

10  to every buyer of an Apple iPod. Prices in the Digital Music Player market are higher than they

11  would have been in a competitive market; the supply and selection of products available is lower

12  than it would be in a competitive market; and the number and effectiveness of competitors have been

13  diminished by unlawful means.

14      71.     The anti-competitive conduct described herein has damaged Plaintiff and the alleged

15  classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §1.

16                              **COUNT II: MONOPOLIZATION**

17           **(For Violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. §2)**

18            **Violations Resulting from the Unlawful Acquisition or Maintenance**
                 **of Monopoly Power in the Digital Music Player Market**

19

20      72.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth

21  above on behalf of the Classes.

22      73.     Through the actions described herein, Apple has willfully acquired and maintained

23  monopoly power in the Digital Music Player market. This conduct has harmed competition in that

24  market, and has caused injury to every buyer of an Apple iPod. Prices in the Digital Music Player

25  market are higher than they would be in a competitive market; the supply and selection of products

26  available is lower than it would be in a competitive market; and the number and effectiveness of

27  competitors have been diminished by unlawful means.

28

COMPLAINT -

74.    There is no appropriate or legitimate business justification for the actions and conduct which have facilitated Apple's monopolization of the Digital Music Player market.

75.    The anti-competitive conduct described herein has damaged Plaintiff and the alleged Classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §2.

### COUNT III: ATTEMPTED MONOPOLIZATION

### (For Violation of Section of the Sherman Antitrust Act, 15 U.S.C. §2)

### Violations Resulting from the Unlawful Acquisition or Maintenance of Monopoly Power in the Online Music Market

76.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

77.    Through the actions described herein, Apple has willfully acquired and maintained monopoly power in the Online Music market. This conduct has harmed competition in that market, making the supply and selection of products available lower in the Online Music market than they would be in a competitive market. The number and effectiveness of competitors have also been diminished by Apple's unlawful conduct.

78.    There is no appropriate or legitimate business justification for the actions and conduct which have facilitated Apple's monopolization of the Online Music market.

79.    The anti-competitive conduct described herein has damaged Plaintiff and the alleged classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §2.

### Violations Resulting from the Unlawful Acquisition or Maintenance of Monopoly Power in the Online Video Market

80.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

81.    Through the actions described herein, Apple has willfully acquired and maintained monopoly power in the Online Video market. This conduct has harmed competition in that market, making the supply and selection of products available lower and making prices higher than they would be in a competitive market. The number and effectiveness of competitors have also been diminished by Apple's conduct.

COMPLAINT -

- 13 -

82.    There is no appropriate or legitimate business justification for the actions and conduct which have facilitated Apple's monopolization of the Online Video market.

83.    The anti-competitive conduct described herein has damaged Plaintiff and the alleged classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §2.

## Violations Resulting from Unlawful Attempted
## Monopolization of the Digital Music Player Market

84.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

85.    Apple has acted with specific intent to monopolize the Digital Music Player market.

86.    There was and is a dangerous possibility that Apple will succeed in its attempt to monopolize the Digital Music Player market because Apple controls a large percentage of that market and has the ability and actually does exclude its competitors through use of anticompetitive technological restrictions on its products. Further success in excluding competitors from the Digital Music Player market will allow Apple to obtain an illegal monopoly over the Digital Music Player market.

87.    This conduct has harmed competition in that market, making the supply and selection of products available lower than it would be in a competitive market. Apple's unlawful attempted monopolization has also reduced the number and effectiveness of competitors in the Digital Music Player market and forced consumers to pay higher prices in the Digital Music Player market than they would in a competitive market.

88.    There is no appropriate or legitimate business justification for the actions and conduct which have facilitated Apple's attempted monopolization of the Digital Music Player market.

89.    The anti-competitive conduct described herein has damaged Plaintiff and the alleged classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §2.

## Violations resulting from the Unlawful Attempted
## Monopolization of the Online Music Market

90.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

91.    Apple has acted with specific intent to monopolize the Online Music market.

COMPLAINT -

- 14 -

92.     There was and is a dangerous possibility that Apple will succeed in its attempt to monopolize the Online Music market because Apple controls a large percentage of that market and has the ability and actually does exclude its competitors through use of anticompetitive technological restrictions on its products.  Further success in excluding competitors from the Online Music market will allow Apple to obtain an illegal monopoly over the Online Music market.

93.     This conduct has harmed competition in that market, making the supply and selection of products available lower than it would be in a competitive market. Apple's unlawful attempted monopolization has also reduced the number and effectiveness of competitors in the Online Music market.

94.     There is no appropriate or legitimate business justification for the actions and conduct which have facilitated Apple's attempted monopolization of the Online Music market.

95.     The anti-competitive conduct described herein has damaged Plaintiff and the alleged classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §2.

**Violations Resulting from the Unlawful
Attempted Monopolization of the Online Video Market**

96.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

97.     Apple has acted with specific intent to monopolize the Online Video market.

98.     There was and is a dangerous possibility that Apple will succeed in its attempt to monopolize the Online Video market because Apple controls a large percentage of that market and has the ability and actually does exclude its competitors through use of anticompetitive technological restrictions on its products.  Further success in excluding competitors from the Online Video market will allow Apple to obtain an illegal monopoly over the Online Video market.

99.     This conduct has harmed competition in that market, making prices higher and the supply and selection of products available lower than they would be in a competitive market.

100.    This conduct has harmed competition in that market, making the supply and selection of products available lower and making prices higher than they would be in a competitive market.

COMPLAINT -

1   Apple's unlawful attempted monopolization has also reduced the number and effectiveness of

2   competitors in the Online Video market.

3        101.   There is no appropriate or legitimate business justification for the actions and conduct

4   which have facilitated Apple's attempted monopolization of the Online Video market.

5        102.   The anti-competitive conduct described herein has damaged Plaintiff and the alleged

6   classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §2.

7                                        COUNT IV

8        **(For Violation of the Cartwright Act, Cal. Bus. & Prof. Code §§16270, *et seq.*)**

9        103.   Plaintiff re-alleges and incorporates by reference each of the allegations set forth

10  above on behalf of the Classes.

11       104.   Apple's actions as described above constituted an unreasonable restraint of trade or

12  commerce throughout California and the rest of the United States in violation of the Cartwright Act,

13  §§16270, *et seq.* of the California Business and Professions Code.

14       105.   The Classes have been injured in their business and property as a result of Apple's

15  illegal conduct, for which they seek damages (trebled where appropriate) including pre-judgment

16  interest.

17       106.   Apple's conduct is continuing and unless equitable relief is granted, artificially

18  inflated prices for Portable Music Players and Online Video will continue unabated.

19                                        COUNT V

20       **(For Violation of California Unfair Competition Law,**
                  **Cal. Bus. & Prof. Code §§17200, *et seq.*)**
21

22       107.   Plaintiff re-alleges and incorporates by reference each of the allegations set forth

23  above on behalf of the Classes.

24       108.   The conduct alleged in this complaint constitutes unlawful, unfair, and fraudulent

25  business acts and practices within the meaning of the California Unfair Competition Law, §§17200,

26  *et seq.* of the California Business and Professions Code.  Plaintiff and the Classes have suffered

27  injury in fact and lost money or property as a result of Apple's violations of law and wrongful

28  conduct.

COMPLAINT -
                                                                                  - 16 -

1          109.    Apple's actions are unlawful and unfair because it has violated, *inter alia*, the

2    Sherman Antitrust Act, the Cartwright Act, the Consumers Legal Remedies Act and because it has

3    monopolized the markets for Online Music, Online Video, and Portable Music Players in violation

4    of California common law.

5          110.    Apple's actions are unfair because in its pursuit of monopoly pricing it has made its

6    products less useful to consumers and prevented them from choosing which companies to do

7    business within the relevant markets based on the merits of each company's products.  Moreover,

8    there is no legitimate business justification for Apple's conduct, and any business justification is

9    further outweighed by the harm Apple's conduct has caused to consumers and competitors.

10          111.    Apple's actions are fraudulent and unfair because it does not inform the purchasers of

11    its products that it has deliberately made them incompatible with the products of its competitors.

12    Apple has deceived consumers who reasonably believed they could purchase Online Music and

13    Online Video from any store to play on Apple's Portable Music Player products, and likewise that

14    the Online Video and Online Music they purchase from Music Store are compatible with any

15    standard Portable Music Player.  This belief is reasonable under the circumstances given that

16    consumers when purchasing media products are accustomed to the fact that the CDs, DVDs, audio

17    cassettes, and VHS cassettes they purchase from any American store are compatible with any

18    standard CD, DVD, audio cassette, and VHS cassette player.

19          112.    Accordingly, Apple has violated the Unfair Competition Law proscription against

20    engaging in unlawful, unfair, and fraudulent business practices.

21          113.    As a result of this unlawful, unfair, and fraudulent conduct, Apple has been unjustly

22    enriched at the expense of Plaintiff, other members of the Classes, and the general public.

23          114.    Apple's conduct is continuing and unless equitable relief is granted, artificially

24    inflated prices for Portable Music Players and Online Video will continue unabated.

25

26

27

28

COMPLAINT -

- 17 -

## COUNT VI

### (For Violation of the Consumer Legal Remedies Act, Cal. Civil Code §§1750, et seq.)

115. Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

116. Plaintiff and each member of the Class are "consumers" within the meaning of Consumer Legal Remedies Act, California Civil Code §1761(d).

117. The Consumer Legal Remedies Act applies to Apple's actions and conduct, described herein, because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

118. Apple is a monopolist with market shares of 75% or more in each of the relevant markets and a stock market capitalization of more than fifty billion dollars. The unnecessary technological restrictions it places on its products offer no benefit to consumers while preventing them from using any Apple product they have already bought from being used with a competitor's digital music player or online store.

119. Apple's size, completely dominant market share, and unreasonable and unfair technological restrictions, place it in a greatly unequal bargaining position relative to consumers in each of the relevant markets.

120. Apple unconscionably exploits this unequal bargaining power by imposing prices, contractual terms, and one sided technological restrictions into contracts with consumers in the digital music markets. This behavior has violated and continues to violate the Consumers Legal Remedies Act, California Civil Code §§1750, et seq.

## COUNT VII

### (For Common Law Monopolization Business Practices)

121. Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

122. The conduct described in this complaint is in violation of California common law prohibiting monopolization.

COMPLAINT -

- 18 -

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tucker, on her own behalf and on behalf of the putative classes prays that the Court declare, adjudge and decree the following:

A. That this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to Plaintiff's claims for injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages and other monetary relief, and declaring Plaintiff as representatives of the Classes and her counsel as counsel for the Classes;

B. That the conduct alleged herein constitutes unlawful tying, monopolization, and attempted monopolization in violation of Cartwright Act, California common law, and sections 1 and 2 of the Sherman Antitrust Act;

C. That the conduct alleged herein is in violation of the California Unfair Competition Law and appropriate injunctive relief be granted pursuant to this law;

D. That the conduct alleged herein is in violation of the Consumer Legal Remedies Act;

E. For an order permanently restraining and enjoining Apple from continuing the unfair and anti-competitive activities alleged herein;

F. That Plaintiff and the Classes are entitled to damages, penalties and other monetary relief provided by applicable law, including treble damages;

G. That Plaintiff and the Classes recover their costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest;

H. For an order requiring full restitution of all funds acquired from Apple's unfair business practices, including disgorgement of revenues and/or profits;

I. Awarding Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law; and

J. That Plaintiff and the Classes are granted such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

COMPLAINT -

- 19 -

1

**JURY DEMAND**

2              Plaintiff demands a trial by jury on all issues so triable.

3  DATED: July 21, 2006                              LERACH COUGHLIN STOIA
                                                     GELLER RUDMAN & ROBBINS LLP
4                                                    JOHN J. STOIA, JR.
                                                     BONNY E. SWEENEY
5                                                    CHRISTOPHER M. BURKE

6

7                                              _Bonny E. Sweeney / CPS_
                                                     BONNY E. SWEENEY
8

9                                                    655 West Broadway, Suite 1900
                                                     San Diego, CA 92101
10                                                   Telephone: 619/231-1058
                                                     619/231-7423 (fax)

11                                                   BONNETT, FAIRBOURN, FRIEDMAN
                                                     & BALINT, P.C.
12                                                   ANDREW S. FRIEDMAN
                                                     ELAINE A. RYAN
13                                                   TODD D. CARPENTER
                                                     2901 North Central Avenue, Suite 1000
14                                                   Phoenix, AZ 85012
                                                     Telephone: 602/274-1100
15                                                   602/274-1199 (fax)

16                                                   Attorneys for Plaintiff

17  C:\DOCUME~1\DeborahD\LOCALS~1\Temp\Apple.doc

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT -